IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JENNIFER COLE-GRICE,

        Plaintiff,

v.

                                      Case No. 1:19-cv-01287-STA-jay

FANNIE MAE, NATIONSTAR
MORTGAGE, LLC d/b/a MR. COOPER
JP MORGAN CHASE BANK, N.A., and
TIM EDGREN

        Defendants.

**RECEIVED BY**

**NOV 0 1 2021**

Thomas M. Gould, Clerk
U.S. District Court
W.D. OF TN, Jackson

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY DISPOSITION

### A: Plaintiff was never served the discovery request that Defendants wish this court to be deemed admitted

FRCP 36(a)(3) states: Time to Respond; Effect of Not Responding. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Here, Defendants Counsel wants this court to deem the discovery request which was allegedly served upon Plaintiff. However, Plaintiff was evicted from the property in March of 2021 and did not receive Defendant's discovery request.

Ultimately, Plaintiff was never served with said request and never received said discovery in order for the matters therein to be deemed admitted.

1

**B. Plaintiff's breach of contract claim do not fail**

Here. Defendants argue that:

Here, Plaintiff's breach of contract claim is premised entirely on the allegations that "Defendant Mr. Cooper and/or Nationstar breached the contract by refusing to accept Plaintiff['s] payment and also breached the deed of trust agreement by foreclosing on August 15, 2019, although Defendant Mr. Cooper specified that payment would be accepted by September 1, 2019. (Am. Compl., Doc. No. 40 at ¶ 16.) <u>The undisputed facts, however, show that the loan was in default as of August 2018, that Plaintiff failed to timely submit a complete loan modification application, and that the loan remained in default until the foreclosure in August 2019.</u> (SUMF ¶¶ 17-22.) Again, Plaintiff's misunderstanding of the escrow review statement apparently caused her to believe that she could make one payment of $434.14 by September 1, 2019 in order to reinstate the loan or comply with the terms of a loan modification agreement. The escrow review statement speaks for itself, and Plaintiff's unfortunate misapprehension of its clear terms do not cure the fact that Plaintiff failed to timely submit a complete loan modification application or bring the loan current in order to prevent foreclosure.

Here, Defendants sole defense to Plaintiff allegation of breach of contract is that

(1)<u>Plaintiff failed to timely submit a complete loan modification application, and (2), that the loan remained in default until the foreclosure in August 2019.</u>  However, Defendant Mr. Cooper prevented Plaintiff from performing under the contract in order to cure default.

In fact, plaintiff never avoided paying the obligation owed under the mortgage and note and has always attempted to rectify any and all delinquencies by seeking assistance to resolve all issues regarding payments.

But, here, Plaintiff was prevented from performing as successor in interest in order to cure delinquencies and make payments.

While Defendants are correct that they could refuse Plaintiffs partial payment, defendants reason as to why they denied Plaintiff's payment gives rise to Plaintiff's breach claims.

Again, the premise in which defendants denied Plaintiff's loan modification, new

2

payment due September 1, 2019, and denied plaintiff the right to cure default via loss mitigation was ultimately because 1) Successor-in-interest status allegedly was not established to complete the loan modification application.

However, Defendants' acts of depriving Plaintiff of her right to act pursuant to the plain language of the contract is the obvious reason Plaintiff seeks her breach of contract claims.

No. 13 of Plaintiff mortgage states:

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Defendants deprived Plaintiff of rights under No. 13 of the deed of trust which allowed Plaintiff, as successor in interest, all the rights afforded to the borrower in the event the lender approved or agreed to such.

In this case, a loan modification occurred in Plaintiff's name in May of 2016, thus, establishing Plaintiff as successor in interest, holding all rights, title, and interests as original borrower.

Based on defendants' failure to look into its own records, on June 17, and July 24 of 2019 when defendants continuously requested successor in interest documents in order to make the application "complete", the loss mitigation and/or loan modification application was indeed complete.

Here, the records and documents are self-explanatory. Plaintiffs attempted to cure all

3

delinquencies and/or default by seeking loss mitigation and/or modification which should have never been considered "incomplete" under the false premise that successor in interest documentation was needed.

Plaintiff relies on the plain language of the mortgage No 13 and Frank v. J.P. Morgan Chase Bank, N.A., No. 15-cv-5811, 2016 WL 3055901 (N.D. Cal. May 31, 2016), and Washington v. Green Tree Servicing, 2017 WL 1857258 (S.D. Ohio 2017) to support that Plaintiff had already established successor in interest status in May of 2016 via loan modification.

In Frank, a husband and wife signed the deed of trust granting the security interest in their home, but only the husband signed the promissory note. Id. at *1. After the husband became ill, the husband and wife submitted a loan modification application. Before the servicer responded to that application, the husband died. Id. Thereafter, the wife unsuccessfully attempted to assume the loan and communicate with the servicer concerning the loan modification application. Id. at *1-2.

Eventually, the wife filed suit raising a claim under the RESPA and Regulation X. The Northern District of California found that the wife had standing to sue under the RESPA even though she had not signed the note because "the Deed of Trust (which calls her a 'Borrower') obligates her to certain other conditions" such as compliance "with the instrument's non-payment covenants (e.g. property and mortgage insurance, occupancy, preservation and maintenance, and other covenants)." Id. at *5. The court concluded that "[t]he threat of default, possible foreclosure, and these additional covenants surely obligate her under the mortgage." Id.

In addition, Washington v. Green Tree Servicing, 2017 WL 1857258 (S.D. Ohio 2017), the court found that the Plaintiff had standing to sue where she "became the sole title owner of

4

the property and thus a successor in interest in the property upon the death of her mother."

Here, on May 17, June 17, and July 24 of 2019 when defendants continuously requested successor in interest documents in order to complete the loan modification process, Plaintiff had already established successor in interest status because:

(1) Plaintiff made payments under the Deed of Trust personally for years.

(2) Plaintiff modified the loan in her name in May of 2016.

(3) Plaintiff communicated with all servicers personally and was treated as a Borrower when communicating with servicers and original mortgagee Chase.

Thus, Plaintiff is and has always been successor in interest although Plaintiff had not signed the note because "the Deed of Trust (which calls her a 'Borrower') obligates Plaintiff to certain other conditions" such as compliance "with the instrument's non-payment covenants (e.g. property and mortgage insurance, occupancy, preservation and maintenance, and other covenants)." Id. at *5.

Here, Defendants deprived Plaintiff of her right to act as borrower and/or successor in interest under the deed of Trust No 13, which caused Mr. Cooper to halt the review of Plaintiffs request for assistance. On May 17, June 17, and July 24 of 2019 Defendants prematurely halted review of Plaintiff's modification although the only thing Defendants needed to complete the loan modification application was successor in interest status.

Therefore, Defendants did in fact breached the contract by failing to consider and/or know that Plaintiff was successor in interest in order to modify the loan, preventing plaintiff from curing default, and failing to accept Plaintiff's payment September 1,2019.

**C. Plaintiff's claim for "action to set aside foreclosure sale" is supported by the evidence.**

While there are no specific elements for wrongful foreclosure, Tennessee courts

generally examine whether contractual or statutory requirements were met in the foreclosure of

the in question." Ringold v. Bank of Am. Home Loans, No. 2:12-cv-2344, 2013 WL 1450929 , at *6 (W.D. Tenn. Apr. 9, 2013) (citing Hutchens v. Bank of Am. N.A., No. 3:11-cv-624, 2012 WL 1618316, at *9-10 (E.D. Tenn. May 9, 2012), Lee v. Equifirst Corp., No. 3:10-cv-809, 2010 WL 4320714, at *10 (M.D. Tenn. Oct. 26, 2010)); accord Jackson v. WMC Corp., No. 2:12-cv-2914, 2013 WL 5550228, at *12 (W.D. Tenn. Oct. 8, 2013).

Furthermore, a party seeking to set aside a foreclosure sale that appears to have been

properly conducted bears the "substantial" burden of showing "some evidence of irregularity,

misconduct, fraud or unfairness on the part of the trustee or mortgagee." Young v. Bank One,

N.A., No. M2003-01359-COA-R3-CV, 2004 WL 2098284, at *1 (Tenn. Ct. App. Sept. 20,

2004) (quoting Holt v. Citizens Cent. Bank, 688 S.W.2d 414, 416 (Tenn. 1984).

A party asserting wrongful foreclosure may seek one of two mutually exclusive remedies

—either damages at law or having the foreclosure sale set aside in equity. 123 Am. Jr. Proof of

Facts 3d Real Property § 417 (2011).

In Defendants Brief in support of summary Disposition, Defendants ultimately argues

that:

**"Plaintiff's claims fail as a matter of fact because Plaintiff has failed to show, nor could she show, that she actually provided a complete loan modification application or proof of successor-in-interest status to Defendants. Defendants' proof shows that Plaintiff never submitted a complete loan modification application. Absent proof supporting any of her allegations, and absent proof of any other irregularity in the foreclosure sale, Plaintiff's claim to set aside the foreclosure sale fails as a matter of fact and should be summarily dismissed on these grounds alone.**

Here, Defendants' argument fails as a matter of law because Regulation X imposes

certain obligations on a loan servicer. As relevant here, under Regulation X a loan servicer must:

• exercise reasonable diligence in obtaining documents and information to complete a borrower's loss mitigation application. 12 C.F.R. § 1024.41(b)(1).

• not move for an order of sale if a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R.§ 1024.41(g).

• provide timely notice of loss mitigation options it will offer the borrower. 12 C.F.R.

6

§1024.41(c)(1)(ii).

• provide a reasonable period of time to fulfill its requirements for acceptance of a trial loan modification plan. 12 C.F.R. § 1024.41(e)(2)(ii).

In this case, on May 17, June 17, and July 24, 2019, when defendant Mr. Cooper continuously requested successor in interest documents in order to consider the loan modification application "completed", Defendant Mr. Cooper failed to exercise reasonable diligence in obtaining documents and information to complete a borrower's loss mitigation application. 12 C.F.R. § 1024.41(b)(1). (Exhibit _)

To support Plaintiff's position that Defendants failed to exercise reasonable diligence in obtaining documents and information to complete a borrower's loss mitigation application, Plaintiff relies upon Dionne v. Fed. Nat'l Morg. Assn., 110 F. Supp. 3d 338, 343 (D.N.H. 2015) (crediting the plaintiff's allegations that defendant mortgage servicer repeatedly asked plaintiff to submit documents that defendant had already received).

Here, and through the course of this litigation, Defendants have now submitted proof of Plaintiff's Successor in interest status to this court, which was held in defendants' possession on May 17, June 17, and July 24, 2019, when Defendants considered Plaintiff's application incomplete due to successor in interest status being "undocumented".

A loss mitigation application is considered to be "complete" under Regulation X when the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). When faced with an incomplete loss mitigation application, RESPA requires that the servicer exercise "reasonable diligence in obtaining documents and information to complete" the loss mitigation application. 12 C.F.R. § 1024.41(b)(1). The servicer must notify the borrower within 5 days of receiving a loss mitigation application whether it is complete or

incomplete and, if incomplete, what information is needed. 12 C.F.R. § 1024.41(b)(2)(i)(B). The written notice must include a reasonable time within which the borrower can submit information to make the loss mitigation application complete. 12 C.F.R. § 1024.41(b)(2)(ii).

A loss mitigation application is considered "facially complete" when a borrower submits all additional information as requested even if the servicer later discover additional information is needed, in which case the servicer must promptly request missing information or corrected documents and allow the borrower a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv).

Here, on May 17, June 17, and July 24, 2019, Defendants possessed Plaintiff's "facially and factually complete" loss mitigation application, although Defendants wrongfully considered Plaintiff's application incomplete due to Defendants' own violations of the reasonable diligence requirement set forth under 12 C.F.R. § 1024.41(b)(1).

Section 1024.41 "prohibits a loan servicer from foreclosing on a property after a borrower submits a loan modification application unless certain conditions are met." Ray v. U.S. Bank Nat'l Ass'n, 627 F. App'x 452, 454 (6th Cir. 2015).

Specifically, § 1024.41 preserves a borrower's right, before a property's foreclosure sale occurs, to submit and have a servicer review a "loss mitigation application," 12 C.F.R. § 1024. 41 (b), which is a request for an alternative to foreclosure that the servicer may make available to the borrower, id. § 1024.31.

To invoke this right, the borrower needs to submit a complete loss-mitigation application to the servicer either before it has initiated foreclosure proceedings, id. § 1024.41(f) (1)-(2), or no later than 37 days before a foreclosure sale is to take place, id. § 1024.41(c)(1), (g).

Here, the foreclosure sale in this case occurred on August 15, 2019. However, it is

undisputed that more than 37 days before foreclosure sale defendants maintained or should have known of the documentation concerning Plaintiff modifying the loan, in her own name in May of 2016, which would have eliminated the Defendants need of successor in interest proof from Plaintiff.

As United States District Judge Lipman explained in Currie, once a complete application has been received; a servicer is barred from pursuing foreclosure. 12 C.F.R. § 1024.41(f), (g). 2018 WL 6517778, at *3.

Thus, Defendant's violations of the reasonable diligence requirements under 12 C.F.R. 1024. 41(b)(1), breach of contract, and violation of 12 C.F.R.§ 1024.41(g)'s prohibition on foreclosure if a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale is evidence of irregularity, misconduct, fraud or unfairness envisioned in order to set aside the foreclosure. Young v. Bank One, N.A., No. M2003-01359-COA-R3-CV, 2004 WL 2098284, at *1 (Tenn. Ct. App. Sept. 20, 2004) (quoting Holt v. Citizens Cent. Bank, 688 S.W.2d 414, 416 (Tenn. 1984)

### D. Plaintiff's slander of title claims do not fail

In this case, defendant Mr. Cooper foreclosed on Plaintiff's property although Mr. Cooper was barred from pursuing foreclosure while in possession of a complete loss mitigation application. 12 C.F.R. § 1024.41(f), (g).  Plaintiff was also deprived of rights under No. 13 of the deed of Trust causing Defendant to prematurely consider Plaintiff's loss mitigation application incomplete.

"Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action." Id. (citation omitted).

"To assert this cause of action, the plaintiff must allege `malice . . . in express terms or

[by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]'" Id. (alteration in original and citation omitted). "

A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title." Id. (citation omitted). Flynn v. GMAC Mortg., LLC, 2011 WL 4708858, at *4 (E.D. Tenn. Oct. 4, 2011) (alterations original).

Here, all of the foreclosure publications and foreclosure deeds were established in violation of RESPA's dual tracking prohibition. This issue itself establish malice. [O]ne may become liable by asserting title in bad faith and without probable cause to the injury of another. Libel of title has been found to occur when a person . . . without privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights in land as would lead a reasonable person to foresee that the conduct of a third party purchaser might be determined by the publication, or maliciously records a document which clouds another's title to real estate. *Phillips v. Woods,* No. E200700697COAR3CV, 2008 WL 836161, at *7 (Tenn. Ct. App. Mar. 31, 2008).

Thus, because there is a question regarding whether Defendants could foreclose in light of plaintiff's rights as successor in interest, and whether defendants possessed a complete loss mitigation application 37 day prior to the august 15, 2019 foreclosure sale, Plaintiffs slander of title claims do not fail.

### E. Plaintiff's quiet title claim do not fail

To succeed on a claim for quiet title, "the complainant must show that he himself has the title, or else he has no right to have a cloud removed from that to which he has no title in himself Hoyal v. Bryson, 53 Tenn. 139, 141 (1871); see Grand Hotel, LP v. Cardin, No. M2004-00996-COA-R3-CV, 2005 WL 2012778, at *4 (Tenn.Ct.App. Aug. 11, 2005). "Generally, the complainant must show he holds legal title to the disputed property." Grand Hotel, 2005 WL 2012778, at *5.

"Tennessee is a 'title theory' state," which means that "[w]hen a borrower obtains a

10

mortgage loan to buy the house, the lender, the holder of the note, has title to the property

Thompson, 773 F.3d at 750. "The borrower must satisfy her mortgage debt in order to obtain

title"; until such time, "the holder of the note has superior title to the property." Id. at 751.

But, here, Plaintiff was prevented from satisfying the mortgage debt, deprived of rights to
cure default via loss mitigation and/or loan modification, and deprived of rights under No. 13 of

the Deed of Trust .

Also, Plaintiff, as successor in interest, and her parents enjoyed "continuous,

uninterrupted adverse possession of the Property for over (40) years" as they "acquired actual or

real possession/control of said real property in 1973," and held such possession "until their

unlawful eviction on March 1, 2021."

In Tennessee this common law doctrine "rests upon the proposition `that, where one has

remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will

be presumed. Cumulus Broadcasting, Inc. v. Shim, 226 S.W.3d 366, 376-77 (Tenn. 2007)

(quoting Ferguson v. Prince, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916)).

Thus, Plaintiff has superior title against any other claimants." *Thompson v. Bank of Am.,*

*N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).

### F. Plaintiff's RESPA claim for "dual tracking" do not fail because a complete modification package was in Defendant's possession more than 37 days prior to the foreclosure period.

Here, it is undisputed that Plaintiff modified the loan in her own name in May of 2016.

Pursuant to the language of No. 13, Plaintiff was successor in interest as a result of the

modification done with the previous servicer and pursuant to No 13 of the Deed of Trust..

Mr. Cooper failed to exercise reasonable diligence in obtaining documents and

information to complete a borrower's loss mitigation application. 12 C.F.R. § 1024.41(b)(1)

causing Mr. Cooper to prematurely consider plaintiff application incomplete on May 17, June 17,

And July 24 of 2019.

Plaintiff relies upon the arguments made throughout this response to explain her position concerning Defendants' possession of a complete application.

Thus, Defendant's possession of a complete loss mitigation and/or loan modification application prevented Defendant Mr. Cooper from foreclosing on August 15, 2021. 12 C.F.R. § 1024.41(f), (g)

### G. Plaintiff's FDCPA claim do not fail

The FDCPA was passed in 1977 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).

To succeed on a claim under the FDCPA, a plaintiff must show that the money or property being collected qualifies as a "debt." 15 U.S.C. § 1692a(5). Second, the collecting entity must qualify as a "debt collector." 15 U.S.C. § 1692a(6). Third, a plaintiff must show that the debt collector violated a provision of the FDCPA, 15 U.S.C. §§ 1692 et seq.

The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

In other words, the term "debt collector" does not include "the consumer's creditors ... or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir.1996) (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985)).

For purposes of their motion for summary judgment, the Defendants Mr. Cooper and/or Nationstar do not dispute that Plaintiff was a consumer, that the "debt" arose out of transactions "primarily for personal, family or household purposes," and that the Defendants were "debt

collectors." The only element in dispute is whether Mr. Cooper violated any of the § 1692e Provisions.

Plaintiff has filed suit under the Fair Debt Collection Practices Act ("FDCPA"), alleging illegal conduct:

  a. Violating RESPA's Dual tracking prohibition 12 C.F.R. § 1024.41(f), (g)

  b. maintaining a foreclosure in violation of the terms of the deed of trust which allows Plaintiff to act as successor in interest.

  c. forcing plaintiff into default as a result of defendants' violations of the reasonable diligence in obtaining documents and information to complete" the loss mitigation application. 12 C.F.R. § 1024.41(b)(1).

  d. Misleading practices in collection of the debt.

Here, in this Response in Opposition to Defendants Motion for Judgment on the Pleadings, Plaintiff describes detailed facts that, if taken to be true, prove the above allegations. The above-cited allegation are, if taken to be true, violations of the FDCPA and the Plaintiff has successfully plead sufficient, non conclusory, facts that support the various claims.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's remaining claims for 1) breach of contract, 2) "action to set aside foreclosure sale," 3) slander of title, 4) quiet title, 5) violation of RESPA, and 6) violation of FDCPA do not fail and this court must continue forth to trial on all issues.

Accordingly, Plaintiff respectfully request denial of Defendants motion for summary Judgment.

Date: 11/01/2021

        JENNIFER COLE-GRICE